IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge Walker D. Miller

Civil Action No. 07-cv-00644-WDM-KLM

EDWARD J. KERBER, *et al.*,

    Plaintiffs,

v.

QWEST GROUP LIFE INSURANCE PLAN, *et al.*,

    Defendants.

## ORDER ON MOTION TO DISMISS

Miller, J.

This matter is before me on Defendants Motion to Dismiss the First, Second, and Seventh Claims for Relief in Plaintiffs' Second Amended Complaint (Docket No. 79), filed May 16, 2008. Despite Plaintiffs' request, after a review of the pleadings and the parties' written arguments, I conclude oral argument is not required. For the reasons that follow, the motion is granted in part and denied in part.

### Background

This case centers around the life insurance plan (the "Plan") Defendant Qwest Communications International, Inc. ("Qwest") provides to its employees ("Plan Participants").[1] Qwest and its predecessors have provided some variation of the Plan to

---

[1] The Plan was previously maintained by U.S. West Communications, Inc. ("US West"). In July 2000, US West merged with Qwest with Qwest as the surviving company. Therefore, some of the named plaintiffs who retired prior to the merger retired from US West rather than Qwest. However, the Plan at issue is the same regardless of when and from which company the plaintiffs retired.

its employees since 1957. Until October 2005, the Plan provided that the benefit amount for retirees would be that in effect at retirement until a certain age, generally 66, and then it would be reduced over a number of years to 50 percent of the benefit amount in effect at retirement. In September 1997 US West added an alternative minimum benefit to the Plan's reduction calculations. The governing documents for the Plan incorporating the change were issued in June 1998 ("1998 Plan Documents").[2] These documents outline the formula for reducing benefits and provide that "such Basic Life Coverage amounts shall not be reduced below certain minimum amounts set forth in Appendix 7." Appendix 7, in turn, sets the minimum benefit as follows:

> (a) The Basic Life Coverage amount for an Eligible Retiree who retires before January 1, 1996 and dies after December 31, 1996 shall not be reduced below $20,000.
>
> (b) The Basic Life Coverage amount for an Eligible Retiree who retires on or after January 1, 1996 shall not be reduced below $30,000.[3]

Therefore, the 1998 Plan Documents set up a reduction phase where the benefit amount is reduced pursuant to a formula but, in any case, not below the greater of 50

---

[2] Generally, when documents not attached to the complaint are considered in a motion to dismiss, the motion to dismiss is converted to a motion for summary judgment. *GFF Corp. V. Associated Wholesale Grocers*, 130 F.3d 1381, 1384 (10th Cir. 1997) ("A 12(b)(6) motion must be converted to a motion for summary judgment if 'matters outside the pleading are presented to and not excluded by the court.'"). However, when the complaint refers to a document and the document is "central to the plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss." *Id.* In this case, Plaintiffs' Second Amended Complaint refers extensively to 1998 Plan Documents and other materials relating to the Plan. Therefore, I may appropriately rely on these documents in deciding the motion to dismiss.

[3] I will refer collectively to the clause setting forth the benefit formula and Appendix 7 as the "Benefits Clause." I will refer to the minimum amount of benefits articulated in the Benefits Clause as the "Minimum Benefit Promise."

percent of the benefit available at age 66 or the minimum benefit amounts prescribed by the Plan.

The 1998 Plan Documents also contain a clause relating to the amendment of the Plan ("Reservation of Rights Clause"). It states as follows:

> <u>Amendment.</u> Except to the extent limited by an applicable collective bargaining agreement, the Company reserves the right, in its sole discretion, to amend the Plan at any time, in any manner, including, without limitation, the right to amend the Plan to reduce, change, eliminate, or modify the type or amount of Benefits provided to any class of Participants. Moreover, unless otherwise explicitly provided in a Contract, no amendment shall be made to the Plan without the consent of the Company. Any such amendment of the Plan shall be effective on such date as the Plan Sponsor may determine; provided, however, that no amendment shall reduce the benefits of any Participant with respect to a loss incurred prior to the date such amendment is adopted.

Both US West and Qwest reinforced the minimum benefits amounts at numerous times after the 1998 Plan Documents were adopted when they communicated with Plan participants regarding the Plan. Over the years, US West and Qwest provided "Confirmation Statements" to Plan Participants. The Confirmation Statements for the years 2001 through 2004 stated that "The Company intends to continue these plans indefinitely; however, it reserves the right to amend, suspend, or discontinue them at any time, except for those who retired before 1991 and where prohibited by a collective bargaining agreement." Immediately above this language was the statement that "This Statement contains only a general description of Company-sponsored benefit plans. The exact details of these plans are included in the legal plan documents that govern them. If there's a discrepancy between this worksheet and the plan documents, the plan documents will govern."

In October 2005, Qwest announced that it was amending the Plan to reduce the

amount of basic life insurance coverage to $10,000 for all occupational retirees.[4]  This same change was announced for all management retirees in October 2006.  Plaintiffs allege that these changes were adopted in Amendment 2006-1 ("Plan Amendment") on December 13, 2006 but applied retroactively to January 1, 2006.  Subsequently, Plaintiffs filed this lawsuit seeking for themselves and "all other Plan Participants and Beneficiaries . . . a panoply of declaratory, temporary, preliminary and permanent injunctive and other equitable relief."  (Am. Compl., Docket No. 10 ¶ 6.)

On February 27, 2008, I dismissed Plaintiffs' claims that Defendants were contractually barred and equitably estopped from reducing the minimum life insurance benefit.  (*See* Order dated February 27, 008, Docket No. 47.)  I concluded that "as a matter of law, the Plan unambiguously reserves Qwest's right to amend the Plan including reducing the amount of life insurance benefits for retired employees." *Id.* at 12.  Plaintiffs filed a second amended complaint on April 3, 2008 (Docket No. 69.)  The current motion to dismiss followed.

## Standard of Review

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) alleges that the complaint fails "to state a claim upon which relief can be granted."  A complaint must be dismissed pursuant to Fed.R.Civ.P. 12(b)(6) if it does not plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1974 (2007).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss

---

[4] It appears that an "occupational retiree" is a retiree who retired from a non-management, non-salaried position.  *See* 1998 Plan Documents at 6 (defining an "occupational employee" as "a Bargained Employee or non-management, non-salaried Employee").

does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* The court must accept as true all well-pleaded facts and construe all reasonable allegations in the light most favorable to the plaintiff. *United States v. Colorado Supreme Court*, 87 F.3d 1161, 1164 (10th Cir. 1996).

## Discussion

At issue in this Motion to Dismiss are Plaintiffs' Claim 1, regarding the Plan's failure to articulate an amendment procedure; Claim 2, regarding breach of fiduciary duty for material misrepresentations; and Claim 7, regarding breach of the duty of loyalty for failure to attempt to procure alternative means for Plan Participants to maintain higher levels of life insurance benefits.

1. Claim 1

With respect to Claim 1, the Second Amended Complaint ("SAC") (Docket No. 69) alleges:

> ERISA Section 402(b)(3) requires that "every employee benefit plan **shall-provide** [sic] **a procedure for amending such plan, and for identifying the persons who have authority to amend the plan.**" (emphasis added) 29 U.S.C. § 1102(b)(3). Since the Governing Plan Document does not provide a *procedure* for amending the PLAN and there are no Qwest corporate by-laws or corporate resolutions that provide a procedure for amending the PLAN, there is no compliance with the requirements of ERISA Section 402(b)(3), 29 U.S.C. § 1102(b)(3).
>
> Accordingly, Named Plaintiffs on behalf of themselves and the purposed class of all Eligible Retirees and their beneficiaries, pursuant to ERISA Section 502(a)(3), 29 U.S.C. § 1132(a)(3), ask this Court to declare the PLAN fails to comply with the requirements of ERISA Section 402(b)(3).

(SAC ¶ 77 (emphasis in original).) In Claim 1, Plaintiffs also seek a declaration that "Named Plaintiffs' and Eligible Retirees' rights to PLAN benefits are not governed by documents purporting to be PLAN amendments reducing their benefits" but rather are "governed by the terms of the Governing PLAN Document, as executed in June 1998." *Id.* ¶ 79.

Defendants move to dismiss this claim pursuant to Fed. R. Civ. P. 12(b)(6) because the United States Supreme Court has expressly held that language essentially identical to that used in the Reservation of Rights Clause was sufficient to meet the requirements of 29 U.S.C. § 1102(b)(3). *See Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 75 (1995). Plaintiffs respond[5] that Claim 1 is a valid claim because it seeks equitable relief that is authorized by the ERISA statutes and that Defendants have mischaracterized Claim 1 by inappropriately focusing on the allegations contained in ¶ 77 of the SAC without acknowledging or considering that Claim 1 expressly incorporates all of the allegations in ¶¶ 1 through 75. Plaintiffs argue that these other paragraphs include sustainable claims such as that Plan administrators should have applied principles of *contra proferentum*[6] and carried out the more favorable terms in the

---

[5] In their response, Plaintiffs state that "Defendants' erstwhile litigation tactic should cause the Court to impose sanctions." (Pls.' Resp., Docket No. 4 at 4.) Although this is not technically a motion for sanctions because it was not contained in a separate paper, *see* D.C.COLO.LCivR 7.1C ("A motion shall not be included in a response or reply to the original motion. A motion shall be made in a separate paper."), I conclude that it is appropriate to address such a comment. As I conclude *infra* in this Order that Defendants' motion to dismiss with respect to Claim 1 should be granted, no sanctions against Defendants for bringing the motion are appropriate.

[6] The doctrine of *contra proferentum* "requires [a court] to construe all ambiguities against the drafter." *Miller v. Monumental Life Ins. Co.*, 502 F.3d 1245,

Plan, that the Plan violated the Prior Loss Proviso, and that the amendments were never adopted. Plaintiffs further argue that Defendants' interpretation of *Curtiss-Wright* is incorrect because "*Curtiss-Wright* was remanded for a determination on whether Curtiss-Wright's stated amendment procedure - amendment 'by the Company' - was actually complied with." (Pls.' Resp., Docket No. 80 at 9.) Defendants reply that although Plaintiffs are correct that they may seek injunctive relief under the ERISA statutes, this is the remedy that they seek and not the wrong alleged in Claim 1. Rather, Claim 1 seeks injunctive relief based on the Plan's failure to include a procedure for amendment—a claim that is precluded given the Supreme Court's holding in *Curtiss-Wright*. Furthermore, Defendants argue that Plaintiffs' response inappropriately addresses other claims from the SAC such as Claims 3 and 4 (alleging that the amendments were never adopted), even though Defendants seek dismissal pursuant to *Curtiss-Wright* of only Claim 1.

As noted by Plaintiffs in the SAC, ERISA § 404(b)(3) requires that every ERISA plan provide a "procedure for amending such plan, and for identifying the persons who have authority to amend the plan." 29 U.S.C. § 1102(b0(3). *Curtiss-Wright* determined that the standard provision, "'The Company reserves the right at any time to amend the plan'[,] sets forth an amendment procedure that satisfies § 402(b)(3)." 514 U.S. at 75. The Court determined that although this language was somewhat sparse, it satisfied the requirement that the plan specify "a procedure for identifying the persons who have

---

1253 (10th Cir. 2007). Although not applicable in ERISA cases where the plan administrator retains discretion, the doctrine is applicable in ERISA cases when the court is "reviewing an ambiguous ERISA plan de novo." *Id.*

authority to amend the plan" by identifying the Company as the "person" authorized to make amendments, and the requirement that the plan specify an amendment procedure by stating that the plan may be amended "by the Company" as opposed to any other person. *Id.* The Court noted that "ERISA . . . follows standard trust law principles in dictating only that whatever level of specificity a company ultimately chooses, in an amendment procedure or elsewhere, it is bound to that level." *Id.* at 85. Therefore, the Court remanded for a determination of whether Curtiss-Wright complied with the terms of the amendment procedure specified in the plan. *Id.*

In this case, the Reservation of Rights clause states that "the Company reserves the right to amend the Plan at any time, in any manner, including, without limitation, the right to amend the Plan to reduce, change, eliminate, or modify the type or amount of Benefits provided to any class of Participants." Under *Curtiss-Wright*, it is clear that this language satisfies the requirements of ERISA § 402(b)(3). Therefore, Plaintiffs' cannot sustain a claim based on the failure of the Plan to comply with section 402(b)(3).

Although Plaintiffs argue that Claim 1 is not based on an alleged violation of 402(b)(3), the plain reading of the SAC demonstrates otherwise. Indeed, Claim 1 clearly states that because the Plan "does <u>not</u> provide a *procedure* for amending the PLAN . . . , there is no compliance with the requirements of ERISA Section 402(b)(3)" and that Plaintiffs seek a declaration that "the PLAN fails to comply with the requirements of ERISA Section 402(b)(3)."[7] (SAC ¶ 77.) The fact that other available

---

[7] Furthermore, the fact that Claim 1 is indeed based on a failure to provide an amendment procedure is evidenced by Plaintiffs' argument regarding Claim 1 in its brief supporting its Amended Motion for a Summary Judgment, which argues that "in the absence of an amendment 'procedure', and 'adoption' procedure, all purported PLAN

remedies are sought by Plaintiffs in Claim 1, such as "removal of PLAN fiduciaries" and a declaration that the amendments are "null and void", does not change the fact that the basis for these remedies, as alleged by Plaintiffs in Claim 1, is that the Plan failed to comply with ERISA § 402(b)(3). Likewise, the fact that Claim 1 expressly incorporates the allegations contained in the preceding paragraphs of the complaint, which may include allegations that are sufficient to sustain other claims based on other violations, also does not change this fact. Finally, although *Curtiss-Wright* did remand for a determination of whether the company complied with the validly specified amendment procedure, an issue not raised by Plaintiffs' Claim 1, it did determine the precise question at issue in Claim 1. Therefore, I conclude that, given *Curtiss-Wright's* express determination that the language used in the Reservation of Rights clause is sufficient to satisfy ERISA § 402(b)(3), Claim 1 fails to state a claim.

2. Claim 2

Claim 2 alleges breach of fiduciary duty for material misrepresentations under ERISA § 404(A)(1), 29 U.S.C. § 1132(a)(1). Plaintiffs allege that Defendants, through various communications sent to Pre-1991 Retirees, falsely represented to these retirees that the pre-amendment benefits would be maintained and never reduced. (SAC ¶¶ 82–87.) Accordingly, they seek "appropriate equitable relief." *Id.* Defendants move for dismissal of this claim for failure to allege any actionable misrepresentations, materiality of the misrepresentations, or detrimental reliance on the misrepresentations.

---

amendments that adversely affect Eligible Retirees and reduce their benefits are null and void." (Docket No. 66 at 2.)

Specifically, with respect to actionable misrepresentations, Defendants argue that because Claim 2 is merely a repackaging of Plaintiffs' estoppel claim, which I previously dismissed, the same reasons supporting dismissal of the estoppel claim apply to Claim 2. Again focusing on the allegations incorporated by reference into Claim 2, Plaintiffs argue that they have sufficiently alleged fiduciary duty breaches in the first eighty paragraphs of the SAC. They also argue that Claim 2 is not merely a repackaged equitable estoppel claim but is based "upon facts beyond those alleged in support of the estoppel claim." (Resp. at 11.) Plaintiffs further argue that they are not required to demonstrate reliance to obtain equitable relief—the only relief sought by Plaintiffs—but, in any case, they have sufficiently alleged "harm to themselves and numerous other Plan participants and beneficiaries." *Id.* at 12–13. Defendants reply that Plaintiffs are again inappropriately incorporating other claims into Claim 2 and that Plaintiffs must allege reliance to maintain a misrepresentation claim.

"'[A] fiduciary has a legal duty to disclose to the beneficiary only those material facts, known to the fiduciary but unknown to the beneficiary, which the beneficiary must know for its own protection.'" *Horn v. Cendant Operations, Inc.*, 69 Fed. Appx. 421, 427 (10th Cir. July 3, 2003) (unpublished)[8] (quoting *Glaziers & Glassworkers Union Local No.252 Annuity Fund v. Newbridge Sec., Inc.*, 93 F.3d 1171, 1182 (3d Cir. 1996)). The Tenth Circuit has not articulated a test for analyzing a breach of fiduciary duty claim for misrepresentations. The Third Circuit, however, adheres to a clear test which has been

---

[8] Although the Tenth Circuit does not allow citation to unpublished opinions for precedential value, unpublished opinions may be cited for persuasive value. 10th Cir. R. 32.1.

used in this district:

> [T]o make out a breach of fiduciary duty claim [under ERISA], a plaintiff must establish each of the following elements: (1) the defendant's status as an ERISA fiduciary acting as a fiduciary; (2) a misrepresentation on the part of the defendant; (3) the materiality of that misrepresentation; and (4) detrimental reliance by the plaintiff on the misrepresentation.

*Daniels v. Thomas & Betts Corp.*, 263 F.3d 66, 73 (3d Cir. 2001); *see Owen v. Regence Bluecross Blueshield of Utah*, 388 F.Supp.2d 1318, 1333 (D. Utah 2005) (applying the test from *Daniels*) (citing *Burstein v. Ret. Account Plan for Employees of Allegheny Health Educ. & Research Found.*, 334 F.3d 365, 384 (3d Cir. 2003) (adhering to the *Daniels* test)). "A fiduciary's misrepresentation or failure to disclose is material 'if there is a substantial likelihood that it would mislead a reasonable employee in making an adequately informed . . . decision.'" *Horn*, 69 Fed. Appx. At 427 (quoting *Jordan v. Fed. Express Corp.*, 116 F.3d 1005, 1015 (3d Cir. 1997) (alteration in original). Furthermore, "[w]here the SPD incorrectly described benefits in the plan, to secure relief, the claimant must show some significant reliance upon, or possible prejudice flowing from, the faulty plan description." *Chiles v. Ceridian Corp.*, 95 F.3d 1505, 1519 (10th Cir. 1996).

After a review of the parties' written arguments, I conclude that Claim 2 is not precluded by my previous ruling that Plaintiffs failed to adequately state a claim for equitable estoppel. I based this decision in part on the fact that the Tenth Circuit did not recognize an equitable estoppel claim under the circumstances because the terms of the Plan were not ambiguous, *see Averhart v. US Wst Mgmt. Pension Plan*, 46 F.3d 1480, 1485–86 (10th Cir. 1994) (noting that an equitable estoppel claim may be a cognizable claim "where 'the terms of the plan are ambiguous' and 'the employer['s] communications constituted an interpretation of that ambiguity'"), and in part on

Plaintiffs' failure to allege "lies, fraud, or an intent to deceive," *see Callery v. U.S. Life Ins. Co. in City of N.Y.*, 392 F.3d 401, 407 (10th Cir. 2004) (holding that generally estoppel is only appropriate under "limited exceptional circumstances" such as in "egregious" cases where there are "lies, fraud, or an intent to deceive"). In this case, the former ground is clearly not applicable to Claim 2 as it is solely relevant to equitable estoppel claims. *Id.* With respect to the latter ground, unlike an ERISA equitable estoppel claim, a breach of fiduciary duty claim does not require that the misrepresentation be intentional. *See Daniels*, 263 F.3d at 73. Therefore, the rulings in the February 27, 2008 Order dismissing Plaintiffs' equitable estoppel claim do not preclude Claim 2.

With respect to materiality, I conclude that Plaintiffs have alleged sufficient facts to survive a motion to dismiss. Plaintiffs allege that the statement in the 2001 to 2004 Confirmation Statements that "The Company . . . reserves the right to amend, suspend, or discontinue [the Plan] at any time, except for those who retired before 1991" constitutes a material misrepresentation. I conclude that it is plausible that this statement may constitute a statement that creates "substantial likelihood that it would mislead a reasonable employee in making an adequately informed . . . decision.'" *Horn*, 69 Fed. Appx. at 427 (quoting *Jordan*, 116 F.3d at 1015 (alteration in original)), even though the immediately preceding paragraph warns that the "statement contains only a general description of Company-sponsored benefit plans" and that in the case of "a discrepancy between this worksheet and the plan documents, the plan documents will

govern."[9] Therefore, Plaintiffs have demonstrated the element of materiality sufficient to survive a Rule 12(b)(6) motion to dismiss.

Furthermore, I conclude that Plaintiffs are required to, and have sufficiently, alleged the detrimental reliance necessary to sustain a misrepresentation claim. First, I note that the cases Plaintiffs cite in support of their contention that detrimental reliance need not be shown in a breach of fiduciary duty claim are inapplicable to this case because none of them dealt with misrepresentation. Even if a showing of actual harm is not necessary to maintain a general breach of fiduciary duty claim, detrimental reliance is an element of a misrepresentation claim, *see Daniels*, 263 F.3d at 73, and, therefore, need to be alleged in this case.[10] In this case, although not argued by Plaintiffs in the

---

[9] Although the warning precluded an equitable estoppel claim because it indicated that the Confirmation Statement was not interpreting an ambiguity in the Plan (*see* February 27, 2008 Order, Docket No. 47 at 15–16), it does not necessarily follow that the warning would stop a reasonable person from relying on express statements in the Confirmation Statements.

[10] Indeed, one of the cases relied on by Plaintiffs, although holding that the "question of whether a fiduciary violated his fiduciary duty is independent from the question of loss", dealt with a claim for failure to prepare an annual report—a claim that does not include detrimental reliance as an element of the claim. *See Shaver v. Operating Eng'rs Local 428 Pension Trust Fund*, 332 F.3d 1198, 1202, 1203 (9th Cir. 2003). The other two cases cited by Plaintiffs deal with whether loss must be demonstrated for Article III standing, not whether detrimental reliance is necessary to maintain a claim for breach of fiduciary duty for misrepresentation. *See Horvarth v. Keystone Health Plan East, Inc.*, 333 F.3d 450, 456 (3d Cir. 2003) (holding that the plaintiff "need not demonstrate actual harm in order to have standing to seek injunctive relief" for a breach of fiduciary duty because "it is well established that '[t]he actual or threatened injury required by Art. III may exist solely by virtue of statues creating legal rights, the invasion of which creates standing'" (quoting *RJG Cab, Inc. v. Hodel*, 797 F.2d 111, 118 (3d Cir. 1986))); *Cent. State Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 433 F.3d 181, 199–200 (2d Cir. 2005) (relying on *Hovarth*, 333 F.3d at 456)).

response to the motion to dismiss,[11] Plaintiffs have alleged such detrimental reliance in the SAC. For example, paragraph 33 of the SAC states that "[c]ountless PLAN participants are unable to adjust their estate planning to address a sudden loss of PLAN benefits." Therefore, construing all reasonable allegations in the light most favorable to Plaintiffs, I conclude that Plaintiffs have sufficiently alleged all of the elements of a misrepresentation claim and the motion to dismiss shall be denied with respect to Claim 2.

3. Claim 7

Claim 7 is based on alleged breaches of the fiduciary duty of loyalty. Plaintiffs allege that Defendants breached this duty when they failed to do anything to protect the rights of the Plan participants when they knew that the life insurance benefits were going to decrease. Although Plaintiffs acknowledge that it was not a breach of fiduciary duty to reduce the benefits or amend the Plan, *see Lockheed Corp. v. Spink*, 517 U.S. 882, 890 (1996) ("Plan sponsors who alter the terms of a plan do not fall into the category of fiduciaries."), they argue that was a breach to fail to investigate or secure conversion or continuation options (the "Options") for Plan Participants so that they could maintain higher levels of life insurance benefits. Defendants move for dismissal of this claim arguing that the decision to amend in a non-fiduciary "settlor function" cannot give rise to a claim of breach of fiduciary duty. *Spink*, 517 U.S. at 890 ("Because the defined functions in the definition of fiduciary do not include plan design, an employer may decide to amend an employee benefit plan without being subject to

---

[11] Instead, Plaintiffs focus on the harm caused by the reduction in benefits itself, rather than any alleged harm caused by the misrepresentation.

fiduciary review." (internal quotation and alteration omitted) (quoting *Siskind v. Sperry Retirement Program Unisys*, 47 F.3d 498, 505 (2d Cir. 1995))); *Hughes Aircraft Co. v. Jaobson*, 525 U.S. 432, (1999) ("ERISA's fiduciary duty requirement simply is not implicated where [a company], acting as the Plan's settlor, makes a decision regarding the form or structure of the Plan such as who is entitled to receive Plan benefits and in what amounts, or how such benefits are calculated." (citing *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 91 (1983))); *see Curtiss-Wright*, 514 U.S. at 78 ("[W]e are mindful that ERISA does not create any substantive entitlement to employer-provided . . . welfare benefits. Employers or other plan sponsors are generally free under ERISA, for any reason at any time, to adopt, modify, or terminate welfare plans." (citing *Adams v. Avondale Indus., Inc.*, 905 F.2d 943, 947 (6th Cir. 1990))).

Those with power to amend are not fiduciaries and there can be no fiduciary duty to advocate for, investigate, or attempt to secure the Options. Plaintiffs respond that it was in the best interest of the Plan Participants to have the Options and, therefore, the Plan fiduciaries were bound by their duty of loyalty to pursue the Options. Plaintiffs provide no authority to support this claim nor how the holdings of the Supreme Court in *Spink* and *Hughes* would be distinguished. Therefore, I agree with Defendants that Plaintiffs have failed to state a claim for breach of fiduciary duty based on the Plan fiduciaries' failure to investigate or advocate for options allowing extension or continuation of life insurance benefits.

Accordingly, it is ordered:

1. Defendants' Motion to Dismiss (Docket No. 79) is granted in part and denied in part.

2. Plaintiffs' First and Seventh claims in the Second Amended Complaint (Docket No. 69) are dismissed with prejudice.

3. All other claims remain pending.

DATED at Denver, Colorado, on March 25, 2009.

BY THE COURT:

s/ Walker D. Miller
United States Senior District Judge