IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge Walker D. Miller

Civil Action No. 07-cv-00644-WDM-KLM

EDWARD J. KERBER, *et al.*,

    Plaintiffs,

v.

QWEST GROUP LIFE INSURANCE PLAN, *et al.*,

    Defendants.

## ORDER ON MOTIONS FOR SUMMARY JUDGMENT

Miller, J.

This matter is before me on cross motions for summary judgment (Docket Nos. 65, 90) on Plaintiffs' First, Third, Fourth, and Fifth claims. Despite Plaintiffs' request, after a review of the pleadings and the parties' written arguments, I conclude oral argument is not required. For the reasons that follow, Plaintiffs' motion shall be denied and Defendants' motion shall be granted in part and denied in part.

### Background

This case centers around the life insurance plan (the "Plan") Defendant Qwest Communications International, Inc. ("Qwest") provides to its employees.[1] Qwest and its predecessors have provided some variation of the Plan to its employees since 1957. The governing documents for the current version of the Plan were issued in June 1998

---

    [1] The Plan was previously maintained by U.S. West Communications, Inc. ("US West"). In July 2000, US West merged with Qwest with Qwest as the surviving company.

(the "1998 Plan Documents"). These documents set up a reduction phase where the life insurance benefit amount is reduced pursuant to a formula but, in any case, not below the greater of 50 percent of the benefit available at age 66 or the minimum benefit amounts prescribed by the Plan. The 1998 Plan Documents also contain a clause relating to the amendment of the Plan (the "Reservation of Rights Clause"). It states as follows:

> <u>Amendment.</u> Except to the extent limited by an applicable collective bargaining agreement, the Company reserves the right, in its sole discretion, to amend the Plan at any time, in any manner, including, without limitation, the right to amend the Plan to reduce, change, eliminate, or modify the type or amount of Benefits provided to any class of Participants. Moreover, unless otherwise explicitly provided in a Contract, no amendment shall be made to the Plan without the consent of the Company. Any such amendment of the Plan shall be effective on such date as the Plan Sponsor may determine; provided, however, that no amendment shall reduce the benefits of any Participant with respect to a loss incurred prior to the date such amendment is adopted.[2]

In October 2005, the Qwest Plan Design Committee ("PDC") met and issued "Minutes and Resolutions, October 14, 2005" (the "2005 Resolutions"). The 2005 Resolutions set forth the "current situation" regarding life insurance benefits and a "recommendation" that, *inter alia*, the life insurance benefits be changed to a "fixed $10,000 benefit" effective January 1, 2006 for post-1990 Occupational Retirees.[3] The 2005 Resolutions concluded with the statements:

---

[2] I refer to this last sentence as the "Prior Loss Proviso" as it limits Qwest's ability to amend the plan for certain retirees.

[3] It appears that an "occupational retiree" is a retiree who retired from a non-management, non-salaried position. *See* 1998 Plan Documents at 6 (defining an "occupational employee" as "a Bargained Employee or non-management, non-salaried Employee").

> RESOLVED, that the Qwest Group Life Insurance Plan be and hereby is amended and restated to incorporate the design changes approved.
>
> FURTHER RESOLVED, that the Executive Vice President and Chief Human Resources Officer is authorized to approve and execute the final form of such restatement.

Although the 2005 Resolutions contemplated that a "final form" would be executed, none was ever completed. Qwest did, however, notify all Post-1990 Occupational Retirees of the reduction in life insurance benefits by sending to all Plan Participants a Statement of Material Modification ("SMM"), a 2006 Occupational Benefit Program Guide ("2006 Guide'), and a Benefit Enrollment statement.[4] The single page October 2005 SMM stated that "[e]ffective Jan. 1, 2006, the basic life insurance benefit will be reduced to a fixed amount of $10,000 for eligible Occupational Post-1990 retirees." Similarly, in the section titled "What's New for 2006 (Summary of Material Modifications)", the 2006 Guide stated that "[e]ffective Jan. 1, 2006, the Basic Life Insurance benefit for eligible employees who retire after Jan. 1, 2006 and retirees who retire on or after Jan. 1, 1991 will be reduced to a flat ten thousand dollar ($10,000) benefit upon the death of the eligible retiree." Although the copy provided to the Court is illegible, Defendants allege that the personalized Benefit Enrollment statements also indicated that the payout under the life insurance policy would be $10,000 effective January 1, 2006. Plaintiffs do not dispute Defendants' allegation concerning the statement in the Benefit Enrollment statements.

Qwest also notified Prudential Insurance Company of America ("Prudential"), the

---

[4] Apparently, these three items were sent together in a single packet that was mailed to each Plan Participant on October 24 and 25, 2005.

issuer of the group life insurance policy ("Group Policy"), that Qwest intended to amend the plan to $10,000 effective January 1, 2006 for Post-1990 Occupational Retirees. Prudential administered the plan in accordance with the change, *i.e.*, paying out the reduced life insurance benefit of $10,000 to beneficiaries, beginning January 1, 2006.

The following year at a December 13, 2006 meeting, the PDC adopted "Amendment 2006-1" to the Plan. The minutes of the meeting stated that the PDC "was asked to consider and approve Amendment 2006-1" and that it "unanimously approved and adopted all of the proposed changes" in the form of the resolutions attached to the minutes as Exhibit A. Exhibit A was titled "Minutes and Resolutions, December 13, 2006" (the "2006 Resolutions") and stated that "the attached amendment which is effective January 1, 2006 is adopted in substantially the form attached hereto." The 2006 Resolutions further stated:

> RESOLVED, that the Amendment 2006-1 to the Qwest Group Life Insurance Plan be and hereby is adopted effective January 1, 2006, in substantially the form as the attached document; and
>
> FURTHER RESOLVED, that Erik P. Ammidown, the Director of Health, Life & Disability Benefits is hereby authorized to publish the amendment, together with the descriptions as required, as soon as is administratively possible.

The attached Amendment 2006-1 provided, *inter alia*:

> Effective January 1, 2006, to amend the Section 1.1 definition of "<u>Basic Life Coverage</u>" to add:
>
>> Effective January 1, 2006, with respect to Occupational Employees upon their retirement, the Basic Life Coverage is a flat $10,000 Benefit. Effective January 1, 2006, with respect to Post-1990 Occupational Retirees, the Basic Life Coverage is a flat $10,000 Benefit. To the extent a Post-1990 Occupational Retiree has elected and maintained participation in Supplemental Life Coverage, the amount of such benefit shall not be impacted due to this change in Basic Life Coverage.

Amendment 2006-1 concluded with the statements "**RESOLVED**, that the Life Plan be and hereby is amended to incorporate the amendments and modifications outlined above and in substantially the form attached hereto" and "**FURTHER RESOLVED**, that the Plan Design Committee be . . . authorized and instructed to execute any and all documents and to take any and all actions necessary or appropriate to effectuate the amendment of the Life Plan as contemplated herein."  Therefore, in December 2006, Amendment 2006-1 essentially formalized the action that was either recommended, as Plaintiffs allege, or adopted, as Defendants allege, in October 2005.

Subsequently, Plaintiffs filed this lawsuit regarding the reduction in life insurance benefits seeking for themselves and "all other Plan Participants and Beneficiaries . . . a panoply of declaratory, temporary, preliminary and permanent injunctive and other equitable relief." (Am. Compl., Docket No. 10 ¶ 6.)  On February 27, 2008, I dismissed Plaintiffs' claims that Defendants were contractually barred and equitably estopped from reducing the minimum life insurance benefit.  (*See* Order dated February 27, 2008, Docket No. 47.)  I concluded that "as a matter of law, the Plan unambiguously reserves Qwest's right to amend the Plan including reducing the amount of life insurance benefits for retired employees."  *Id.* at 12.  Plaintiffs filed a second amended complaint on April 3, 2008 (Docket No. 69.)  By Order dated March 25, 2009, I dismissed Claims 1 and 7. (*See* Order dated March 25, 2009, Docket No. 151.)   The current motions for summary judgment address Claims 3, 4, and 5, which all deal with the amendments to the Plan outlined above.[5]  Claim 3 alleges that the October 2005 Resolution was ineffective as a

---

[5]  Both motions for summary judgment (Docket Nos. 65, 90) also address Claim 1.  Claim 1, however, was previously dismissed in my Order on Motion to Dismiss

Plan amendment; Claim 4 alleges that Amendment 2006-1 was ineffective; and Claim 5 alleges that Defendants have violated the Prior Loss Proviso with respect to Plan Participants who died during 2006.

## Standard of Review

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *accord Bryant v. Farmers Ins. Exch.*, 432 F.3d 1114, 1124 (10th Cir. 2005) ("Under Fed. R. Civ. P. 56(c), summary judgment is only appropriate if the pleadings and admissible evidence produced during discovery, together with any affidavits, show that 'there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'"). A factual issue is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). "When applying this standard, [the court] view[s] the evidence and draws reasonable inferences therefrom in the light most favorable to the nonmoving party." *Simms v. Okla. ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1326 (10th Cir. 1999) (citing *Byers v. City of Albuquerque*, 150 F.3d 1271, 174 (10th Cir. 1998)).

Where "the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying 'a lack of evidence for the nonmovant on an essential element of the nonmovant's claim.'" *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001) (quoting

---

(Docket No. 151), dated March 25, 2009. Accordingly, the arguments pertaining to Claim 1 are now moot and will not be addressed.

*Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998)). Then, "[t]o avoid summary judgment, the nonmovant must establish, at a minimum, an inference of the presence of each element essential to the case." *Id.* (citing *Hulsey v. Kmart, Inc.*, 43 F.3d 555, 557 (10th Cir. 1994)). Indeed, the plaintiff must set forth specific facts "that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (D. Colo. 1998) (citing Fed. R. Civ. P. 56(e)). A mere scintilla of evidence is not sufficient to create a genuine issue of material fact and survive summary judgment, *Simms*, 165 F.3d at 1326 (quoting *Lawmaster v. Ward*, 125 F.3d 1341, 1347 (10th Cir. 1997)), nor are unsupported conclusory allegations, *Annett v. Univ. of Kan.*, 371 F.3d 1233, 1237 (10th Cir. 2004) (citing *L & M Enters., Inc. v. BEI Sensors & Sys. Co.*, 231 F.3d 1284, 1287 (10th Cir. 2000)). When the opposing party fails to "set out specific facts showing a genuine issue for trial . . . summary judgment should, if appropriate, be entered against that party." Fed. R. Civ. P. 56(e)(2). Indeed, a "nonmovant acts, or fails to act, at its peril." *Adler*, 144 F.3d at 672.

## Discussion

As a preliminary matter, I must address Plaintiffs' motion to strike Defendants' Motion for Summary Judgment[6] on Claims 1, 3, 4, and 5 (Docket No. 93). Plaintiffs move to strike Defendants' motion for failure to comply with section 6.3 of my PreTrial and Trial Procedures, which requires inclusion of a "Statement of Undisputed Material

---

[6] Although Defendants have filed numerous motions for summary judgment, because this Order addresses only Defendants' motion on Claims 1, 3, 4, and 5, all references to Defendants' motion are in reference to the motion regarding Claims 1, 3, 4, and 5 (Docket No. 90).

Facts" in a motion for summary judgment. Rather than including a facts section in their motion for summary judgment, Defendants referenced the facts section set forth in their response to Plaintiffs' motion for summary judgment. Plaintiffs object because such incorporation permits additional argument given the limitation to twenty pages per section 6.2 of my PreTrial and Trial Procedures. Plaintiffs claim prejudice because they too were limited to twenty pages in responding to Defendants' motion.

In response, Defendants contend that their motion for summary judgment and Plaintiffs' motion to summary judgment address exactly the same issues and, therefore, reference to the facts section in their response brief was appropriate. They argue that my procedures "neither require such duplicative presentation of the exact same text nor prohibit incorporation by reference in order to avoid needless duplication." (Docket No. 94 at 2.) Defendants further argue that, in fact, duplication would be contrary to the Local Rules of this District.

Although my procedures do not expressly prohibit reference to another brief, it is clear that a statement of undisputed material facts is to be included in each motion for summary judgment, regardless of whether such facts are alleged in another brief. I further note that, contrary to Defendants' argument that duplicative facts would be in violation of the Local Rules, the Local Rules also require a statement of undisputed facts in a motion for summary judgment. *See* D.C.COLO.LCivR 56.1A ("A motion under Fed. R. Civ. P. 56 shall include a statement of undisputed facts . . . ."). Although Plaintiffs allege prejudice, I conclude otherwise as Defendants' deficient pleading spared Plaintiffs the necessity of responding to the facts section as required by section 6.4 of my procedures. Given the foregoing, I will consider the briefs as submitted.

Therefore, Plaintiffs' motion to strike shall be denied.[7]

1. <u>2005 Resolutions</u>

With respect to Claim 3, Plaintiffs argue that the 2005 Resolutions were ineffective as an amendment because the section regarding the reduced benefit is merely a "recommendation" and was not carried out until fourteen months later in Amendment 2006-1. They argue that the portion of the 2005 Resolutions that states that the Plan "be and hereby is amended and restated" is ineffective to amend the Plan because it does not specify how the plan is to be amended, *i.e.*, it references "the design changes approved", which is not defined. They further argue that the 2005 Resolutions were not "adopted" within the meaning of the Prior Loss Proviso.

Defendants argue that there is no issue of fact regarding whether the 2005 Resolutions amended the Plan as the document clearly states that the Plan "be and hereby is amended." Furthermore, they argue that the PDC was authorized to amend the plan; the PDC intended to amend the Plan, as indicated in the members' affidavits; and the PDC manifested its intent to amend through various actions including notifying the affected Plan Participants of the changes, administering the Plan in accordance with the amendment, and treating the 2005 Resolutions as part of the Plan in requests for documents. Defendants argue that any ambiguity in the 2005 Resolutions is irrelevant as a plan amendment need not be unambiguous to effectuate an amendment. They further argue that, regardless of whether there were any deficiencies with respect to the

---

[7] I do note, however, that perhaps it would have been prudent for Defendants to seek leave to reference their facts section in another brief rather than ignoring my procedures and the Local Rules and, subsequently, refusing to admit their non-compliance.

2005 purported amendment, its actions after the October 2005 meeting ratified the amendment.  Finally, Defendants argue that Plaintiffs' claims regarding the amendments to the Plan must fail because Plaintiffs have failed to allege any detrimental reliance by any plaintiff or bad faith or active concealment by Qwest.

In *Curtiss-Wright v. Schoonejongen*, 514 U.S. 73, 85 (1995), the Supreme Court addressed an amendment to a health benefit plan.  In determining that the reservation of rights clause was sufficient to set forth an amendment procedure, the Court noted that to amend a plan, the company would need to "'sufficiently manifest its intention' to amend." *Curtiss-Wright*, 514 U.S. at 80 (quoting Restatement (Second) of Trusts § 331, Comment c (1957) ("If the settlor reserves a power to modify but does not specify any method of modification, the power may be exercised by any method which sufficiently manifests his intention to modify the trust."))[8]  In remanding the case, the Court stated that the question was whether Curtiss-Wright had complied with the amendment procedure, a determination of which would require "a fact-intensive inquiry, under applicable corporate law principles, into what persons or committees within Curtiss-Wright possessed plan amendment authority, either by express delegation or impliedly, and whether those persons or committees actually approved the new plan provision." *Id.* at 85.  The Court went on to note that if the amendment was found not to have been properly adopted or authorized, "the question would then arise whether any subsequent

---

[8] "'ERISA is, in its most important dimension, federal trust law. Substantively, the statute . . . absorbs the core fiduciary duties of loyalty and prudence from trust law and extends them to govern all aspects of plan administration.'" *Geddes v. United Staffing Alliance Employee Med. Plan*, 469 F.3d 919, 925 (10th Cir. 2006) (quoting John L. Langbein, *What Erisa Means by "Equitable": The Supreme Court's Trail of Error in Russell, Mertens, and Great-West*, 103 Colum. L. Rev. 1317, 1319 (2003)).

actions, such as the executive vice president's letters informing respondents of the termination, served to ratify the provision *ex post*." *Id.* (citing 2 W. Fletcher, Cyclopedia of the Law of Private Corporations § 437.10, pp. 386 (1990)). The Tenth Circuit has also acknowledged that "*ex post* events might ratify a company's intended amendment to a plan." *Allison v. Bank One-Denver*, 289 F.3d 1223, 1236 (10th Cir. 2002) (citing *Curtiss-Wright*, 514 U.S. at 85). The Tenth Circuit cautioned, however, that "informal communications, whether they be oral or written, frequently will lack sufficient indicia of intent to amend." *Id.* (declining to determine "the cobbled-together collection of meeting minutes and informal communications" qualified as an amendment to the express terms of a plan).

In this case, I conclude that no question of fact remains regarding whether the PDC amended the Plan. There is no dispute that the PDC had authority to amend the Plan, effectuated the 2005 Resolutions, reduced the Plan benefits in the Group Policy pursuant to the 2005 Resolutions, notified the affected Plan Participants of the change in benefits via a formal SMM,[9] and conducted itself as if the 2005 Resolutions constituted an amendment to the Plan. Indeed, Plaintiffs do not dispute that these actions manifested the PDC's intent to amend the Plan and reduce the life insurance benefits to $10,000 for all Post-1990 Occupational Retirees. Rather, Plaintiffs argue that the 2005 Resolutions are somewhat ambiguous in that they do not clearly define

---

[9] Plaintiffs argue that the December 2005 SMM did not notify Plan Participants of the reduced life insurance benefits. It is undisputed, however, that the December 2005 SMM did not address the life insurance plan, rather addressing the Qwest Health Care Plan, the Qwest Savings & Investment Plan, and the Qwest Pension Plan. It is also undisputed that the October 2005 SMM did notify Plan Participants of the reduction in life insurance benefits.

what the amendment consisted of; the 2005 Resolutions were not executed in a formal manner like Amendment 2006-1; and the "final form" referenced in the 2005 Resolutions was not completed until December 2006.

None of Plaintiffs' arguments, however, negate that Defendants' actions manifested its intent to amend the Plan. First, even if the 2005 Resolutions were not perfectly clear, the PDC manifested its intent to amend the Plan in numerous ways other than by executing the 2005 Resolutions. Second, the amendment procedure specified in the Plan does not require formal execution of a document to amend the Plan. Rather, as in *Curtiss-Wright*, Qwest, indisputedly acting through the PDC, was authorized to amend the Plan in any manner which "sufficiently manifested its intention" to amend the Plan. *See Curtiss-Wright*, 514 U.S. at 80 (quoting Restatement (Second) of Trusts § 331, Comment c (1957). Although the PDC may have taken further steps to formalize the benefit changes in Amendment 2006-1, contrary to Plaintiffs' assertion, it was not required to take these steps to effectuate an amendment to the Plan. Indeed, I note again that all that was required was a manifestation of intent to amend—a requirement that was satisfied by numerous actions as discussed above. Finally, although the 2005 Resolutions *authorized* a "final form", the 2005 Resolutions were not contingent upon nor did the amendment procedure require execution of a "final form". Therefore, given the numerous actions by Defendants following execution of the 2005 Resolutions regarding the reduction in benefits, I conclude that the PDC, the entity with authority to amend the Plan, clearly manifested their intent to amend the Plan to provide a reduced $10,000 life insurance benefit for all Post-1990 Occupational Retirees.

Moreover, even if the 2005 Resolutions were deficient as an amendment, I

conclude that the same actions by Defendants which manifested their intent to amend the Plan also served to ratify the amendment to the Plan. Certainly, Tenth Circuit cautions that "informal communications" may be insufficient to ratify a plan amendment if they do not sufficiently indicate the intent to amend. *Allison*, 289 F.3d at 1236. Here, however, Defendants' actions clearly indicate such an intent. Indeed, as noted above, following the 2005 Resolutions, Defendants actually altered the Group Policy to reflect the reduced benefits, sent an SMM to Plan Participants notifying them of the reduction in benefits, and administered the Plan with reduced benefits. These actions sufficiently indicate the intent to amend and served to ratify the 2005 Resolutions.

I also conclude that application of the doctrine of *contra proferentem*, as requested by Plaintiffs, is not warranted in this case. The doctrine "requires [a court] to construe all ambiguities against the drafter." *Miller v. Monumental Life Ins. Co.*, 502 F.3d 1245, 1253 (10th Cir. 2007). Although not applicable in ERISA cases where the plan administrator retains discretion, the doctrine is applicable in ERISA cases when the court is "reviewing an ambiguous ERISA plan de novo." *See id.* In this case, however, I find no such ambiguity. Plaintiffs allege that the 2005 Resolution, if considered an amendment, creates an internal inconsistency in the Plan documents by not striking the inconsistent language in the 1998 Plan Documents defining the amount of the life insurance benefit. First, I note that there is no requirement in the plan amendment procedure that an amendment strike inconsistent language in the governing documents. Furthermore, the very purpose of an amendment is to replace or supplement the prior language and I decline to conclude that leaving the previous language in place creates an ambiguity when, as here, the amendment unambiguously supplants the previous

language.  Thus, *contra proferentem* is not applicable and the 2005 Resolutions control as a valid amendment to the Plan.

Finally, I conclude that Plaintiffs' argument that the 2005 Resolutions were not "adopted" within the meaning of the Prior Loss Proviso has no merit.  The term "adopted" is not defined in the 1998 Plan Documents.  Therefore, it should be given its "'common and ordinary meaning as a reasonable person in the position of the plan participant, not the actual participant, would have understood the words to mean.'"  *See Admin. Comm. of Wal-Mart Assocs. Health & Welfare Plan v. Willard*, 393 F.3d 1119, 1123 (10th Cir. 2004) (quoting *Blair v. Metro Life Ins. Co.*, 974 F.2d 1219, 1221 (10th Cir. 1992)).  To "adopt", as the word is commonly used in this context, means "to take up (a practice, method, word, or idea) from some one else"; "to embrace, espouse" or "to approve, to confirm (accounts, reports, etc.)".  Oxford English Dictionary (2d ed. 1989).  It also means "to accept formally and put into effect."  Webster's New Collegiate Dictionary 16 (1974).  Amending the Plan, either via the 2005 Resolutions, any other actions evidencing Defendants' intent to amend the Plan, or ratification of the Plan, is plainly an "adoption" of the reduction in benefits as the change was accepted, put into effect, and confirmed.  That the amendment may have been "ratified" rather than formally "adopted" is irrelevant as the reduction in benefits was clearly approved or accepted.  Therefore, I conclude that there remains no question of fact as to whether the changes referenced in the 2005 Resolutions were adopted within the meaning of the Prior Loss Proviso.

2.    Amendment 2006-1

In their Fourth Claim, Plaintiffs argue that Amendment 2006-1 is not effective as

a Plan amendment because it did not nullify or delete inconsistent provisions in the 1998 Plan Documents. Therefore, Plaintiffs argue that pursuant to *contra proferendem*, the more favorable terms in the 1998 Plan Documents should control the benefit amount. As discussed above, however, the Plan does not require inconsistent Plan language be stricken to effectuate a valid Plan amendment and I find no ambiguity with the very language it is meant to amend. Therefore, I conclude that Amendment 2006-1 was a valid amendment under the Reservation of Rights Clause.

3. Group Policy

Plaintiffs also argue that neither the 2005 Resolutions nor Amendment 2006-1 amended the Plan because Qwest failed to abide by the terms of the Group Policy with Prudential. Plaintiffs allege that because the Group Policy is incorporated into the Plan, the Plan administrators were required to administer the Plan in accordance with both the 1998 Plan Documents and the Group Policy under the "plan documents rule." The plan documents rule holds that an "administrator is obliged to act 'in accordance with the documents and instruments governing the plan. . . .'" *Kennedy v. Plan Adm'r for DePont Sav. & Inv. Plan*, 129 S.Ct. 865, 875 (2009).[10] Plaintiffs argue that because the purported amendment to the Group Policy was not signed by both Qwest and Prudential, which is required under the Group Policy, the 2005 Resolutions and Amendment 2006-1 are ineffective. I disagree, however, because whether Qwest and Prudential fulfilled their obligations with respect to the insurance contract is a separate

---

[10] Although Defendants are correct that *Kennedy's* facts are distinguishable from those here, the general holding regarding the plan documents rule is applicable outside of the exact facts of the case.

question than whether Qwest validly amended its life insurance plan. Although failure to abide by the terms of the insurance contract with Prudential may be a violate of the plan documents rule,[11] it does not affect whether Qwest manifested its intent to amend the Plan via the 2005 Resolutions, any actions taken with respect thereto, or Amendment 2006-1. The amendment procedure for the Plan does not require a valid amendment of the insurance contract to effectuate an amendment to the Plan. Indeed, amendment of the Group Policy would generally only occur during implementation of the amendment *after* there has been a valid amendment to the Plan. Alternatively, if Plaintiffs are alleging a violation of ERISA for failure to abide by the plan documents rule, such a violation was not alleged in the Second Amended Complaint and, therefore, is inappropriately argued now.

4. Claim 6

Plaintiffs' Sixth Claim alleges that because neither the 2005 Resolutions nor Amendment 2006-1 were effective as Plan amendments, reducing benefits as of January 1, 2006 violated the Prior Loss Proviso. However, I determined above that both the 2005 Resolutions and Amendment 2006-1 validly amended the Plan. In

---

[11] I also note, however, that I am unconvinced that the Group Policy with Prudential is part of the 1998 Plan Documents. Indeed, although "Plan" is defined in the 1998 Plan Documents to includes all "Contracts", which are then defined as agreements or contracts between Qwest and a "Vendor" to provide benefits under the Plan or insurance policies with a Vendor, it does not appear that Prudential is a "Vendor" as defined by the Plan. Vendors are defined as "Insurers and other entities listed in Appendix 5 with which the Company has entered into a Contract." Appendix 5 does not list Prudential as a Vendor. Therefore, it appears that the Group Policy between Qwest and Prudential is not incorporated into the Plan such that it would be subject to the plan documents rule.

particular, the 2005 Resolutions were adopted within the meaning of the Prior Loss Proviso at least by January 1, 2006 as the 2005 Resolutions were executed in October 2005 and the SMM detailing the change was sent in October 2005. Given the rulings, Plaintiffs' claim is without any basis.

Accordingly, it is ordered:

1. Plaintiffs' motion to strike Defendants' Motion for Summary Judgment on Claims 1, 3, 4, and 5 (Docket No. 93) is denied.

2. Plaintiffs' Amended Motion for Summary Judgment (Docket No. 65) is denied.

3. Defendants' Motion for Summary Judgment on Claims 1, 3, 4, and 5 (Docket No. 90) is granted with respect to Claims 3, 4, and 5 and denied as moot with respect to Claim 1.

4. Plaintiffs' Third, Fourth, and Fifth claims in the Second Amended Complaint (Docket No. 69) are dismissed with prejudice.

5. Claims Two, Six, and Eight in the Second Amended Complaint (Docket No. 69) remain pending.

DATED at Denver, Colorado, on March 31, 2009.

BY THE COURT:

s/ Walker D. Miller
United States Senior District Judge