IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge Walker D. Miller

Civil Action No. 07-cv-00644-WDM-CBS

EDWARD J. KERBER, et al.,

    Plaintiffs,

v.

QWEST GROUP LIFE INSURANCE PLAN, et al.,

    Defendants.

---

## ORDER

---

This matter comes before me on Plaintiffs' Motion to Alter or Amend Judgment. Pl's. Mot. Alter or Amend J., ECF No. 162. After a review of the pleadings and the parties' written arguments, I conclude that oral argument is not required. For the reasons that follow, Plaintiffs' motion shall be denied.

### BACKGROUND

Plaintiffs' motion is limited to my summary judgment ruling on the Second Claim for Relief, "Breach of ERISA Fiduciary Duty—Material Misrepresentations," Second Am. Compl., ECF No. 69. Plaintiffs bring this case pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), centering around the life insurance plan ("Plan") that Defendant Qwest Communications International, Inc. ("Qwest") provides to its

employees.[1]

In their Second Claim for Relief, Plaintiffs contended that Qwest breached its fiduciary duty in making material misrepresentations concerning the Plan life insurance benefits of Qwest pre-1991 retirees by stating that their life insurance coverage would be maintained and never be reduced while Defendants' reservation of rights were ambiguous and confusing.

As I found and concluded in my order, at various times prior to the Plaintiffs' retirements and prior to any changes in the Life Benefit, Qwest sent Summary Plan Descriptions ("SPDs") and other plan documents to Plan Participants which all stated that Qwest reserved the right to amend the Plan. *See* Order on Mots. Summ. J. *Background*, ECF No. 159. On that basis, I concluded that summary judgment was appropriate as Plaintiffs had failed to demonstrate that there remained an issue of fact whether any Plaintiff reasonably relied on an actionable material misrepresentation. *Id.* at pp. 13–22.

## STANDARD OF REVIEW

Motions to alter or amend judgment are regarded with disfavor. *See Mellon v. Cessna Aircraft Co.*, 64 F. Supp. 2d 1061,1063 (D. Kan. 1999) (quoting *Gorelick v. Dep't of the Treasury*, No. Civ.A. 97-2545-GTV, 1998 WL 472647, at *1 (D. Kan. July 30, 1998)). A Fed. R. Civ. P. 59(e) motion to alter or amend a judgment "is appropriate where the court has misapprehended the facts, a party's position, or the controlling law.

---

[1] The Plan was previously maintained by U.S. West Communications, Inc. ("US West"). In July 2000, US West merged with Qwest with Qwest as the surviving company. In this Order I will refer to Qwest and/or its predecessors collectively as "Qwest".

. . . It is not appropriate to revisit issues already addressed or advance arguments that could have been raised in prior briefing." *Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000) (citing *Van Skiver v. United States*, 952 F.2d 1241, 1243 (10th Cir. 1991)). "Grounds warranting a motion to reconsider include (1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice." *Id.* (citing *Brumark Corp. v. Samson Res. Corp.*, 57 F.3d 941, 948 (10th Cir.1995)).

## DISCUSSION

A.  <u>Change in Controlling Law.</u>

Plaintiffs argue that there have been intervening changes in the controlling law, relying in particular on *Unisys Corp. Retiree Med. Benefits ERISA Litig.*, 579 F.3d 220 (3d Cir. Sept. 2, 2009) ("*Unisys*"). *Unisys* was decided by the Third Circuit after my August 25, 2009 summary judgment order (ECF No. 151). In that order, I did cite with approval *Glaziers & Glassworkers Union Local No. 252 Annuity Fund v. Newbridge Secs., Inc.*, 93 F.3d 1171 (3d Cir. 1996), *Jordan v. Fed. Express Corp.*, 116 F.3d 1005 (3d Cir. 1997), and *Daniels v. Thomas & Betts Corp.*, 263 F.3d 66 (3d Cir. 2001) to state the standard for a breach of fiduciary duty under ERISA:

> [T]o make out a breach of fiduciary duty claim [under ERISA], a plaintiff must establish each of the following elements: (1) the defendant's status as an ERISA fiduciary acting as a fiduciary; (2) a misrepresentation on the part of the defendant; (3) the materiality of that misrepresentation; and (4) detrimental reliance by the plaintiff on the misrepresentation.

*Daniels*, 264 F.3d at 73; *see also*, *Owen v. Regency Bluecross Blueshield of Utah*, 388 F. Supp. 2d 1318, 1333 (D. Utah 2005) (applying test from *Daniels*) (citing *Bernstein v. Ret. Account Plan for Employees of Allegheny Health Educ. & Research Found.*, 334

3

F.3d 365, 384 (3d Cir. 2003) (adhering to *Daniels* test)). I also noted that, "[a] fiduciary's misrepresentation or failure to disclose is material 'if there is a substantial likelihood that it would mislead a reasonable employee in making an adequately informed . . . decision.'" *Horn v. Cendant Operations, Inc.*, 69 Fed. Appx. 421, 427 (10th Cir. 2003) (quoting *Jordan v. Fed. Express Corp.*, 116 F.3d 1005, 1015 (3d Cir. 1997) (alteration in original)).

To the extent that Plaintiffs contend that *Unisys* creates new law that supplants *Newbridge Secs., Inc.* and the other cases named above, I disagree. *Unisys* simply maintains the standard set forth in those cases, stating the test as follows:

> To establish such a breach, a plaintiff must demonstrate that: (1) the defendant was "acting in a fiduciary capacity"; (2) the defendant made "affirmative misrepresentations or failed to adequately inform plan participants and beneficiaries"; (3) the misrepresentation or inadequate disclosure was material; and (4) the plaintiff detrimentally relied on the misrepresentation or inadequate disclosure.

*Id.* at 228 (citing *Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am., U.A.W. v. Skinner Engine Co.*, 188 F.3d 130, 148 (3d Cir. 1999) and *Daniels*, 263 F.3d at 73))

To the extent that Plaintiffs assert that *Unisys* demonstrates a clear factual error in applying that law, *Unisys* is clearly distinguishable. Unisys assured retirees that their medical benefits would cost a retiree $20 per month until age sixty-five, after which time there would be no cost at all. *Id.* at 231. This was a misrepresentation because it led retirees to believe that they would have these benefits for the remainder of their lives without the possibility of change. *Id.* In addition, Unisys did not provide retirees with a reservation of rights statement until after a retiring employee had submitted an enrollment card to receive retiree medical benefits under the Unisys plan. *Id.* at 232.

4

In contrast, at various times prior to Plaintiffs' retirements and before making any changes in the Life Benefit, Qwest sent SPDs and other plan documents to Plan participants, which all stated that Qwest reserved the right to amend the Plan. *See* Ord. Mots. Summ. J. at 2–3, ECF No. 159; *see also*, Group Life Ins. Program at 5, ECF No. 107-12; Retirement Decision Workshop notice and Schedule, at 14 & 22–24, ECF No. 107-30; Summ. of Material Modifications at 5, ECF No. 108-16. The SPD issued in 1987, which was in effect in February 1990 when Second Claim for Relief-Plaintiffs Kerber and Phelps retired, set forth the reduction formula for the Life Benefit and provided that "[t]he Company intends to continue the Group Life Insurance Benefit Program but reserves the right to terminate or amend it at any time, subject to applicable limitations in the law or any applicable collective bargaining agreements." Group Life Ins. Program at 5, ECF No. 107-12. Additionally, Qwest continued to send periodic SPDs throughout the relevant time frame of this case, including after the Life Plan was altered to reduce the Life Benefit to a flat $10,000. *See e.g.*, Summ. of Material Modifications "*Retiree Basic Life Plan Change*" at 3–4, ECF No. 108-16. Each one included an unambiguous reservation of rights to change the Life Benefit.

Also, the Insurance Plan Description contained its own express reservation of rights clause that informed the retirees covered by the "5+5 Option" that Qwest retained the right to reduce or terminate the Life Plan at any time for any reason. *See Vallone v. CNA Fin. Corp.*, 375 F.3d 623, 642 (7th Cir. 2004) (stating "[i]n law, the inclusion of reservation of rights clauses in an agreement accurately conveys that benefits may be altered or terminated"). In addition, as part of the Video Conference distributed among the Qwest sites, during which Qwest answered questions about the "5+5 Option," the

Qwest Human Resources Director stated that the reservation of rights statement in the paperwork was "intended to give the company the ability to modify the plans as circumstances and conditions change in the future. It's really intended to make the plans more meaningful and more affordable not only for the employee but for the company." Order at 3–4, ECF No. 159 (quoting Video Conference colloquy, ECF No. 107-33). This is a clear statement, consistent with the written reservations of rights, that any of the plans might change in the future.

In their reply in support of the Motion to Alter or Amend Judgment (ECF No. 164), Plaintiffs cite *Salisbury v. Hartford Life and Accident Ins. Co.*, 583 F.3d 1245 (10th Cir. 2009). Even though I may disregard this new argument to which there has been no response, I note it is not new, controlling law. Salisbury is an appeal from a district court determination that the plaintiff's ERISA lawsuit was time-barred. *Id.* It does not consider the issue of breach of fiduciary duty by misrepresentation. *See id.* Salisbury's reliance on the established law of *Miller v. Monumental Life Ins. Co.*, 502 F.3d 1245, 1250 (10th Cir. 2007) is not new. Indeed, *Miller* was a case cited in my order, which applied its principle when deciding the ambiguity issue.

Accordingly, Plaintiffs have not shown a change in the new, controlling law as a reason to set aside summary judgment on Plaintiffs' Second Claim for Relief.

    B.    <u>Misapprehension and Misapplication of Facts.</u>

In their reply, Plaintiffs argue for the first time, that I misapprehended and misapplied undisputed material facts in this case. *See* Reply Part 2, ECF No. 164. Defendant has not moved to file a surreply. Because the case and argument supporting it are raised for the first time in the reply brief supporting the motion to reconsider, I may

6

decline to consider it. *See S.E.C. v. 4NExchange*, 2005 WL 1518838 (10th Cir. 2005) (finding no error in district declining to consider argument raised for first time in reply brief supporting motion to reconsider); *see also*, *Pippin v. Burlington Res. Oil & Gas Co.*, 440 F.3d 1186 (10th Cir. 2006).

Regardless, were I to consider the new issue, the argument would not change my ruling granting summary judgment on Plaintiff's Second Claim for Relief. As briefly indicated above, I considered the entire record in the case in arriving at my decision on the Motions for Summary Judgment (ECF No. 159), including the content of the Video Conference, all exhibits, all of the plan documents presented to Plaintiffs, and each reservation of rights statement.

Accordingly, Plaintiffs' Motion to Alter or Amend Judgment (ECF No. 162) is denied.

DATED at Denver, Colorado, on July 22, 2010.

BY THE COURT:

s/ Walker D. Miller
United States Senior District Judge